Judge Mills
delivered the Opinion of the Court.
William Peddicord, for the use of Charles Hazlerigg, brought this action, in the court below, and declared in covenant.
The writing declared on, was an instrument by which the intestate of the defendant, engaged with sundry persons severally, “to freight for them to the port of New Orleans, or further, the amount of neat tobacco, annexed to their respective names” as subscribers to the covenant, “and to make return of the proceeds of sales, with the deduction of six shillings per hundred weight, in case he did not go further than New Orleans, the dangers of the river And unavoidable accidents excepted, and if he went further, each subscriber was to pay an additional and proportionate consideration.”
The plaintiff averred, that he sent by the defendant’s intestate, a quantity of tobacco, being three hogsheads, which he sold on its safe arrival at New Orleans, for a certain sum, and assigned for breach, that he failed on his return, to account for the proceeds thereof, or any part thereof, according to his covenant.
The main issue relied upon by the defendants was covenants performed by him as administrator of his intestate.
On the trial the defendant gave in evidence a receipt of the nominal plaintiff, Peddicord, in full for two hogsheads of tobacco freighted, which was not contested by plaintiff. Next he gave in evidence a receipt of Hazlerigg, for whose use, this suit, on the face" of the pleadings, was brought, and whose, authority to receive as the assignee of the balance due in the covenant, does not, appear to be questioned, *371 for the proceeds of a third hogshead of tobacco “No. 89,” in the following words:
Hazlerigg’s receipt.
Plaintiff’s evidence.
Hazlerigg's and Boone's bond to Hill, reciting the controversy for the money mentioned in the receipt, and obliging them, in consideration of its payment to Hill, to indemnify him against the claim of Holliday to the money, and also the claim asserted in this action.
“Received, Sept. 6, 1819. of Leonard Hill fifty-six dollars and fifty cents, in full for one hogshead, No. 89. Signed, Charles Hazlerigg.”
He proved that the money was paid to said Ha-zlerigg, at the time the receipt was executed.
This narrowed the controversy to the price of his third and last hogshead, as it was not further disputed that the defendant had accounted for the proceeds of the two first.
The plaintiff, to get around this receipt of Hazlerigg. introduced and read a bond, (which was in possession of the defendant, and produced by him, on notice to do so,) executed by said Hazlerigg and Daniel Boone, with a penalty, defeasible by a condition annexed thereto, reciting “that whereas Jas. Gibson took on freight to New Orleans, several hogsheads of tobacco, for William Peddicord, and the defendant, as administrator of Gibson, had settled with said Peddicord for every one of said hogsheads, except the one numbered eighty nine, and, weighing, at New Orleans, 1495, And whereas said Peddicord had transferred to one Daniel Boone, who had transferred to Hazlerigg all his said Peddicord’s interest in said hogshead of tobacco and the said Hill had paid said Hazlerigg. for said head of tobacco, and one Stephen Holliday contended that said hogshead belonged to him the being one who freighted in the same shipment) and this contest between said Holliday, Peddicord and Hill was never yet adjusted.” After this recital the condition followed, that if the obligors should “indemnify and save harmless, the said Mill, against all suits and controversies, either with Peddicord or Holliday, in regard to said hogshead of tobacco, and should pay costs legal and extraordinary, give personal attention to the defence of any suit, for said hogshead, and then pay all costs and damages which should be recovered against said Hill, if such should be recovered on account of said hogshead of tobacco, then the obligation to be. void, or else to remain in force.”
Evidence offered by the plaintiff, to prove mistake in the recital of the bond, rejected.
Verdict and judgment.
Question.
Where papers executed by the person for whose use the action is brought, are read and treated by the parties on the trial, as the acts of the nominal plaintiff, the court may so consider them to estop the plaintiff from denying the recitals.
The. plaintiff then offered the following evidence; 1st, the record of a suit by Holliday, against the present defendant, for the same hogshead of tobacco, No. 89, in which Holliday had recovered the value of the hogshead 2nd, the parol proof that Hazlerigg had defended that suit, and on the event, had paid the damages and all costs, and that the hogshead was the. same named in the receipt of Hazlerigg, and indemnifying bond to Hill; and that the hogshead, No. 89, though believed by the parties to that bond and receipt, to be the hogshead of Peddicord. was not in fact his, hut belonged to Holliday, and of course the receipt from Hazlerigg to Peddicord for the price of said hogshead and said bond of indemnity, were executed under this mistaken belief. This evidence was objected to, and rejected by the court.
The jury found, a verdict for defendant, to reverse which this writ of error is prosecuted.
The question for our consideration is the rejection of this evidence, if it was admissible and believed by the jury, then a verdict might have been rendered for the plaintiff, for the price of the hogshead which really belonged to Peddicord, leaving the hogshead, No. 89, to go to Holliday. If it is not admissible, then the receipt must have its full operation.
We are. relieved from the necessity, of. enquiring whether this receipt for the price of hogshead No. 89, and the bond of indemnity which attended it, ought to have the same, effect, when executed between Hazlerigg (for whose, use this suit was brought,) and the defendant Hill, the administrator of Gibson, his it would have had between Peddicord, the legal and nominal plaintiff and BUT For the interest of Hazlerigg may be noticed in a court of law, and the, parties here, appear throughout, to have considered the art of Hazlerigg as the act of Peddicord, and to have given it the same weight, and not to have attempted to ward off its effects, because it was not done by Peddicord, We shall, therefore, consider it in the same, way, as a transaction between the plaintiff and defendant to the suit.
Receipts may be contradicted or impeached.
Bond of one for whose use the action is brought and prosecuted, to indemnify the defendant against the demand sued upon, is bar.
Actor is estoped by the recitals in the bond of the person who owned the claim, and for whose use the action is prosecuted, obliging him self to indemnify defendant against the claim.
*373 The enquiry must then rest upon the point whether Hazlerigg was not estopped by his receipt and bond, to make any averment or proof against them,
If the receipt stood alone we are aware that precedents are not wanting, which permit such an instrument to be impeached by parol. It is the bare evidence of a fact, of the most durable kind, it is true; but still it has not been held to be of that solemn nature, which forbids all enquiry into its fairness or truth, and in this respect it does not stand on an equality with other written instruments.
The question must, therefore, turn upon the effect of the bond of Indemnity. This in its turn does indemnify the defendant not only against the demand of Holliday, which was then unsatisfied; but also against the demand or claim of Peddicord himself, These two appear to be the only claimants of the hogshead. To which it really belonged, had not been settled. The meaning then of the stipulation of Hazlerigg is, “pay me and I will indemnify you against both.” One of these claims, is the very one set up in this suit, and if Peddicord, either for himself, or for the use of Hazlerigg should be permitted to recover, Hazlerigg and Boone, the obligors in the bond of indemnity would become liable by the terms of their bond to refund, and pay back to Hill, the amount of the same judgment, with costs, legal and extraordinary. To permit the recovery, therefore, would be tolerating a recovery, and recovery back of the identical sum in contest. This the law does not permit, and it has often been held that a covenant not to sue operates as a release, and that no party shall he permitted to recover that which he has solemnly stipulated against.
The only remaining question is, could the plaintiff here be permitted to avoid this principle by shewing, as he attempted to do, that the hogshead, No. 89, was not the hogshead of Peddicord, and that the parties entered into the contract, under the mistaken belief that it was, and thereby avoid the effect of the bond of indemnity, by recovering for another hogshead of a different number, against the title of which he had not indemnified?
Argumeut for avoiding the estoppel.
It cannot be alleged he recital was the consequence of a mistake, which was the consideration of the bond, and so the estoppel avoided, where it appears the facts had been disputed and the matter compromised.
There is great appearannce of plausibility in this argument, and of equity in the claim thus st.at-ed. For if there were two hogsheads unaccounted fob, to wit, the one No. 89, which was recovered by Holliday, for which the defendant had accounted, and another still remaining, for which he had hitherto rendered no account, and Hazlerigg had paid over the money which he had received for No. 89, to Holliday, its real owner, it would seem to follow that the defendant ought not, in equity, to keep for the estate of his intestate, the price of the hogshead still remaining in bis hands.
The force of this argument has had its due weight,, and has been felt by the court.
But on mature consideration, we conceive that it cannot prevail, and that the defendant is sheltered by a legal defence, and cannot be reached by Hazlerigg and Peddicord, who in this action may be, considered as one person, although he may and will remain liable to any of the other numerous subscribers, if the hogshead unaccounted for should belong to one of them.
It seems evident by reading the bond of indemnity relied on as an estoppel by the defendant, and introduced by the plaintiff, that the question whether the hogshead No. 89, really belonged to Peddicord, or to Holliday, or some other person, constituted the real doubt between the parties, and caused the defendant to hesitate in paying the money till he was indemnified. To solve this, doubt to the satisfaction of the defendant, was one of the main objects of this bond and this Hazlerigg did, supposing that the hogshead of this particular number, was the hogshead of Peddicord, and, the expressions used in the recital of the bond, clearly imply, and indeed express, that No 89 was the hogshead of Peddicord, which is the very fact which the plaintiff here, by the rejected evidence, attempted to disprove. No doubt he may be estopped, even by a recital in his deed, 2 Starkie 30, Crump vs. Burnett, 2 Litt. Rep. 209. It is true that in some cases, a party may make averment and proof against a recital in a deed, even at law such as where that recital was *375 produced by the fraud or artifice of his adversary, as an inducement to the contract; or where the deed was either not read at all, or read falsely, and the signature procured by stratagem. But nothing of this is pretended in the execution of this instrument. The party here, as far as is shown, well understood the writing, and no untrue representation induced his signature. His adversary doubted about a fact and hesitated to pay the money, until this fact, on which his responsibility rested, was settled and fixed. Hazlerigg was willing to run the risque of the fact, and settle it in the manner which would bring the money to his own hands, without danger to the defendant. To admit the proof then, would be allowing him to take back his admission and set the fact again at large, and that from equitable considerations only, to wit, his own mistake or the mutual mistake of the parties. In such cases generally the contract is valid in a court of law, and the party, if he is entitled to any redress, must be turned round to a court of equity to set the contract aside, and thus remove the obstacle out of his way, before he can go in opposition to his act and deed.
Estoppel by a recital in a deed may be avoided in law or equity, by proving it was inserted by fraud.
Simpson, for plaintiff; Hanson and French, for defendant.
The judgment must, therefore, be affirmed with costs.