## Williams v. United Mine Workers of America.

June 6, 1944.

Joseph K. Beasley for appellant.

Golden & Lay for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER
—Affirming.

On the first appeal, which is cited in 294 Ky. 520, 172 S.W. 2d 202, 205, we held that, under the Fair Labor Standards Act of 1938, 29 U. S. C. A. sec. 201 et seq., and KRS 352.530, a labor union, in this instance the United Mine Workers of America, can be sued by a check weighman to recover compensation for overtime, if actually employed by the Union itself. The judgment holding to the contrary was reversed, with directions to the lower Court to overrule the three special demurrers to the petition. In the opinion, the Court said: ''The question in this case is whether the union, as such, employed appellant.'' On return of the case, the trial had on this issue resulted in judgment being entered upon a verdict in favor of the United Mine Workers of America, returned by the jury at the conclusion of all the evidence, at the direction of the Court. The Court directed the verdict, because he was of the opinion that the evidence was not sufficient to show that appellant was employed by ''the union, as such.'' The soundness of his conclusion in that respect is the sole question presented on this appeal.

Appellant, previous to his election as check weighman, was an employee of the Harlan-Wallins Coal Corporation, of Harlan County. The United Mine Workers of America is the exclusive bargaining agent for the workers at the mines owned by the Coal Corporation, and under contract entered into by the United Mine Workers of America and the Harlan-Wallins Coal Corporation, the latter could employ no worker unless he belonged to the Union. Section 42 of the contract provides:

"The Mine Workers shall have the right to a checkweighman of their own choosing to inspect the weighing of coal. Such checkweighman is to be selected from the mine workers at that mine.

\*  \*  \*  \*  \*

"The wages of checkweighman will be collected through the pay office semimonthly upon a statement of time made by the checkweighman, and approved by the Mine Committee. The amount so collected shall be deducted on a percentage basis, agreed upon by the checkweighman and clerk, from the earnings of the miners engaged and legitimate expenses incident to the office, except where the method of payments is otherwise mutually agreed to.

\*  \*  \*  \*  \*  ,,

Appellant was elected to the position of check weighman for two six month periods, and one period of slightly over nine months, commencing June 25, 1940 and ending March 31, 1942. The elections occurred June 21, 1940, March 26, 1941, and September 26, 1942. Each of these elections was held approximately 60 feet from the mouth of the Bear Branch Mine, operated by the Harlan-Wallins Coal Corporation. Not over 60 of the 400 members of Local Union No. 3892 of the United Mine Workers of America were eligible to vote at the election, because the election of check weighman was limited to the coal loaders and machine men operating in the Bear Branch Mine, where appellant performed his duties. Nominations and elections were made pursuant to notices, typical of which are those posted for the election to be held in March, 1941, and are as follows:

"Notice

"All members of Local Union No. 3892 working at the Bear Branch Mine of Harlan-Wallins Coal Corporation, Verda, Ky. are hereby requested to be present at the Hall next Wednesday evening about 6 p.m., March 19, 1941, for the purpose of nominating candidates for the office of checkweighman at the Bear Branch Mine.

"Election will be held one week from next Wednesday, March 26, 1941, so as to give the winning candidate plenty time to record his certificate of election and otherwise qualify to take up the checkweighman's duties as soon as the new contract begins and is signed.

"(Signed) Sherman Williams
"(P. Head)"
"Local Union No. 3892

"United Mine Workers of America
"Verda, Ky., March 20, 1941

"The Mine Committee at the Bear Branch Mine, of the Harlan-Wallins Coal Corporation, will hold an election for checkweighman Wednesday evening, March 26, 1941.

"Election will be held by secret ballot and within sixty feet of mouth of mine. Winning candidate will hold 6 months from April 1, 1941.

"Any qualified voter who wishes to be a candidate may legally become an independent candidate by signing his name on this notice not less than three days before time for election.

"(Signed) Arthur Smith
"Chairman Com.

"Candidates { Nominated { Sherman Williams
{ Independent { (Signed) Wat Muncy
{ (Signed) Hayes Lewis."

At that meeting 44 coal loaders and machine men voted, appellant receiving 31 votes, and Hayes Lewis, an independent self-nominated candidate, receiving 13. The check weighman was paid through the Corporation, which withheld the funds from the pay of the coal loaders and machinemen whose weights he checked. Appellant testified: "I was elected indirectly by the United Mine Workers of America." "I was nominated in the union hall, and Floyd Catron (President of the Local Union) called for nomination."

Appellant introduced J. N. Landrum, Deputy Social Security Tax Collector for Harlan County, who testified that the Local Union made a Social Security Tax return showing appellant to be employed by the Union as checkweighman, and that the Local Union paid the tax assessed by reason of the employment of appellant. On cross-examination, he stated that he did not know where the Local Union got the money to pay the tax; he did not remember who signed the check for the tax. On further cross-examination, he stated that he did not say that the Union paid him

the tax levied by reason of appellant's employment. His knowledge in respect to the matters asked him seems to be vague and indefinite; and we are of the opinion, in view of all the testimony, that the evidence introduced by this witness has no probative value. It is upon this evidence, and appellant's conclusory statements: "I was elected indirectly by the United Mine Workers of America." "I was nominated in the union hall, and Floyd Catron called for nomination," and the inferences to be drawn therefrom, that appellant relies in support of his contention that he was entitled to have the case submitted to the jury upon the question of whether he was employed by Local Union No. 3892 of the United Mine Workers of America.

We are of the opinion that this evidence is not sufficient to justify its submission to the jury on this issue. The Financial Secretary of the Union testified that he handled the check weighmen's Social Security returns and payments. He did not deny that the Union's Social Security Tax returns listed appellant as its employee; but testified that the money with which to pay the tax, by agreement, was withheld by the Coal Corporation from the wages of the coal loaders and machine men working in the Bear Branch Mine, and payment made of the tax so withheld by the Coal Corporation's check. He further testified that the Local Union did not contribute "one penny" to the payment of the tax. The contract with the Coal Corporation and the notices for nomination and election of check weighman, as well as the testimony of all the witnesses in the case, including Williams himself, show that the check weighman is elected to that position by the coal loaders and machinemen of the mine wherein he worked. He is paid by them, through the agency of the Coal Corporation, and no part of his salary is borne by the Union. The fact that he was nominated at a meeting held in the hall of the Local Union of the United Mine Workers of America is not evidence of his employment by the Union; the hall was merely a place designated for the coal loaders and machinemen of Bear Branch Mine to meet and vote upon his nomination. The only fair inference to be drawn from the evidence, as a whole, is that the Social Security Tax is reported in the name of the Union, as a matter of convenience. This evidence, in the light of the uncontradicted evidence conclusively showing appellant to have been an employee of the coal loaders and

machinemen working in Bear Branch Mine, does not raise the inference that appellant was an employee of the "Union, as such." The Union at large did not participate either in the nomination or election of appellant, nor did it participate in compensating him for the services he rendered the coal loaders and machinemen operating in Bear Branch Mine. That being true, no issue of fact was presented; and the question of whether he was an employee of the Union, or an employee of the individual coal loaders and machine men of the mine, became a question of law. This question was decided by the Trial Court, and we think correctly so.

The judgment is affirmed.